ESTATE OF JOHN W. PEALE, BY FRANKLIN D. PEALE AND WILLIAM D. PEALE, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5575.    Promulgated October 17, 1928.

*Hugh Satterlee, Esq.,* for the petitioner.
*Eugene Meacham, Esq.,* for the respondent.

OPINION.

TRAMMELL: The first issue for consideration presents the question whether collection of the deficiency in this case is barred by the statute of limitations. With respect thereto, the Revenue Act of 1921, in effect when the assessment was made, provides as follows:

SEC. 250. (d) The amount of income, excess-profits, or war-profits taxes due under any return made under this Act * * * for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, * * * shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes * * * shall be begun, after the expiration of five years after the date when such return was filed * * *.

The return for the calendar year 1917 was filed by the taxpayer on or prior to June 15, 1918, and the five-year period provided in the statute above quoted for determination, assessment and collection of the tax, expired not later than June 15, 1923, unless both the Commissioner and the taxpayer consented in writing to a later determination, assessment and collection.

By an instrument in writing dated February 13, 1923, the parties did consent to such later determination, assessment and collection, and the statutory period was thus extended to include March 1, 1924. The deficiency was assessed on February 29, 1924, within the statutory period as extended by said consent, but collection thereof was barred on and after March 2, 1924, unless the statutory period was further extended by a consent in writing of said parties. *Bowers* v. *New York & Albany Lighterage Co.,* 273 U. S. 346.

By an instrument in writing dated February 28, 1924, signed by the taxpayer on or about that date and filed with the respondent on March 1, 1924, and thereafter executed by the respondent, the parties consented to a determination, assessment and collection of the amount of tax due for the year 1917 within a period of one year after the expiration of the statutory period of limitation as extended by the instrument first above referred to. The statutory period for collection was thus extended to March 1, 1925, if said second instrument was valid.

A consent extending the time for assessment and collection of taxes beyond June 2, 1924, executed pursuant to the Revenue Act of 1921, continues in force after the date of enactment of the Revenue Act of 1924. *Cunningham Sheep & Land Co.*, 7 B. T. A. 652.

The Revenue Act of 1924 provides, in section 277 (a) (2), that the amount of income, excess-profits or war-profits taxes imposed by the Revenue Act of 1916 or the Revenue Act of 1917, or such Acts as amended, shall be assessed within 5 years after the return was filed, and provides in section 278 (c) that where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment, the tax may be assessed at any time prior to the expiration of the period agreed upon. Thus, it appears that the deficiency tax involved herein was assessed within the period prescribed in section 277, as extended by the consent in writing provided in section 278. The Revenue Act of 1924 further provides as follows:

Sec. 278. (d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax * * *.

The Revenue Act of 1926 contains substantially the same provisions, insofar as relevant to the facts of this case.

Where an assessment was made prior to the enactment of the Revenue Act of 1924, within the five-year period of limitation provided by section 250 (d) of the Act of 1921, and the Revenue Act of 1924 was enacted prior to the expiration of that five-year period, we have held that respondent has six years from the date of the assessment within which to begin a suit or other proceeding for the collection of such tax, under section 278 (d) of the Revenue Act of 1924, above quoted. *Art Metal Works*, 9 B. T. A. 491. See also *United States* v. *Russell*, 22 Fed. (2d) 249.

And where the five-year period provided by section 250 (d) of the 1921 Act, as extended by consents in writing, did not expire until subsequent to the enactment of the Revenue Act of 1924, and the assessment was made within such period, as extended, which are

the facts in this case, the same rule applies. *G. L. Ramsey*, 11 B. T. A. 345.

It follows that collection of the deficiency herein is not barred by limitations, unless, as contended by the petitioner, the consent in writing or so-called "extension waiver" of February 28, 1924, is invalid.

The petitioner contends substantially, first, that section 278 (d) of the 1924 Act should not be construed to extend for a six-year period from the date of assessment, the time for collection of the deficiency herein, for the reason that prior to the enactment of the Revenue Act of 1924 the taxpayer and the Commissioner, pursuant to express statutory authority contained in section 250 (d) of the 1921 Act, then in effect, had, by the consent agreement of February 28, 1924, definitely fixed and limited the period within which collection should be made, and the period so fixed expired not later than April 1, 1925. This point has been decided adversely to the petitioner's contentions, in *G. L. Ramsey*, *supra*. See also *Sunshine Cloak & Suit Co.*, 10 B. T. A. 971.

The petitioner further contends that said last mentioned consent or so-called "extension waiver" is not valid, for the reason that it was executed and filed by the taxpayer under a mistake of fact, that is, under the belief, based upon representations of officers of the Bureau of Internal Revenue, that the jeopardy assessment had not been made but would be held in abeyance, and that, relying upon such representations, the consent was filed on March 1, 1924, solely with a view to holding up the assessment.

Without passing upon the question whether, or in what circumstances, a consent executed by a taxpayer under a mistake of fact would be invalid, it is sufficient to point out that the evidence before us falls far short of establishing such a situation as that upon which the petitioner's contentions are predicated.

In his letter of February 16, 1924, the Commissioner officially and formally advised the taxpayer that the additional assessment would be listed immediately, without giving the usual 30-day notice as provided in section 250 (d) of the Revenue Act of 1921. On receipt of this letter, the taxpayer's Washington counsel took steps to obtain an "extension waiver" and at the same time took up with the officers of the Bureau of Internal Revenue the matter of delaying assessment until such "waiver" could be secured. At that time it was agreed, according to the testimony, that the assessment would be held up as long as possible in order to give counsel time to get the "extension waiver." The time within which the assessment could be made under the consent dated February 13, 1923, expired March 1, 1924, and the time not then having been further extended,

the assessment was made on February 29, 1924. From these facts it would appear that the officers of the Bureau acted in good faith and held up the assessment as long as might reasonably be expected in the circumstances.

With respect to the filing of the so-called "extension waiver" on March 1, 1924, and what occurred in connection therewith, the only evidence before us is the testimony of P. S. Talbert, the taxpayer's Washington counsel, who testified as follows:

Following correspondence with Mr. Peale, the waiver was finally received as I recall, on March 1, 1924, and I took it down and arranged with the special assessment division, where the case had been pending, to stop the,—to recall the case from the Proving Division, if possible, and not to have the assessment made at that time, and filed the waiver with it, with the understanding that that would be done, if possible; it developed afterwards that at the time I filed the waiver, the assessment had already been made; and of course it was impossible to stop it.

Q. And those were the circumstances in which the waiver was filed on March 1, 1924, is that right?

A. That is right; it was filed with a view to,—and only with a view to holding up the bringing of that jeopardy assessment, which was proposed by the letter.

Nowhere does the record disclose that either the taxpayer or his representative was advised prior to the filing of the "extension waiver" on March 1, 1924, that the assessment had in fact not been made, or that it would in any event, upon the filing of said "waiver," be further delayed. According to the testimony of the taxpayer's counsel, he was, on March 1, 1924, merely advised by the officers of the Special Assessment Division, where the case had been pending, that if the "extension waiver" was filed, the case would be withdrawn from the Proving Division, if possible, and the assessment held up, if possible. However, this was obviously impossible, since it developed afterwards that the assessment had then already been made.

It is not shown that any representation was made to said counsel with respect to the actual status of the matter at that time, other than the fact that the case was then in the Proving Division, impliedly for the purpose of listing the assessment. It can not be said, therefore, that any misrepresentation of fact was made to the taxpayer's counsel, nor that he was misled into believing that by filing said "waiver" assessment would be delayed. If the "waiver" was filed with a view to holding up the assessment, it was apparently so filed only in the hope of realizing a bare possibility.

In the light of these facts, we are unable to reach the conclusion that the consent in writing dated February 28, 1924, extending the period for collection to March 1, 1925, is invalid. It follows, therefore, that, under the statutes and decisions above cited, the respondent has six years from February 29, 1924, the date of the assessment, in

which to make collection. Accordingly, collection of the deficiency herein is not now barred by limitations.

The second issue for consideration is whether the amount of $200,183.36 of the taxpayer's net income for the calendar year 1917 is taxable under section 209 of the Revenue Act of 1917, which provides as follows:

Sec. 209. That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business * * *.

In determining the deficiency in controversy, the respondent computed the tax on said amount under the provisions of section 210 of said Act.

During the year 1917, the taxpayer received salaries from two corporations in the total amount of $93,859.77, which he reported in his return as taxable under section 209, *supra*, and on which respondent computed the tax under said section. During said year, the taxpayer received a total net income of $11,726.33 from the operation of coal barges, which amount he reported as taxable under section 210, and on which the respondent computed the tax under said section. During said year, the taxpayer also received net income in the amount of $225,183.36 from the sale of coal from the Diamond Culm Bank, under the circumstances set out in our findings of fact above. This amount taxpayer reported as taxable under section 209, but respondent computed the tax on $25,000 thereof under said section and on the balance of $200,183.36 under section 210. It is with respect to the correctness of this action of the respondent that the issue before us relates.

The uncontroverted evidence shows that in 1910 the taxpayer entered into a lease contract with the Hollenback Coal Co. whereby he acquired the right, for a period of 5 to 7 years, to take, prepare for market, remove and ship the coal contained in a certain culm bank known as the "Diamond Bank," located at Wilkes Barre, Pa., in consideration of a stipulated royalty, payable quarterly.

In 1915 the taxpayer erected a small shed at the culm bank, preliminary to the erection of a washery for reclaiming the coal. He was thereupon advised by the Lehigh & Wilkes Barre Coal Co. that it claimed title to said culm bank. As a result of subsequent negotiations, the taxpayer and said coal company entered into an agreement, under date of July 28, 1915, which provided that the coal company should recover the coal in said culm bank and turn over to the taxpayer 47.31 per cent of the daily output, for which he was to pay to said company preparation costs not to exceed 45 cents per ton, payment to be made on the 25th day of each month for all coal shipped

during the preceding calendar month. The taxpayer filed orders with the coal company from time to time to be filled from his portion of the coal recovered, and also purchased a portion of the coal company's share of the coal reclaimed, which was paid for by him on the same terms as the preparation costs.

The taxpayer's contract with the Hollenback Coal Co. was modified in accordance with the agreement with the Lehigh & Wilkes Barre Coal Co., and the royalties due thereunder to the former company were paid quarterly.

All of said coal was sold by the taxpayer either before shipment or while en route to tidewater, and was sold for cash with order or cash on receipt of invoice. During the taxable year 1917, the receipts from the sale of coal were at all times sufficient to meet the royalty payments, preparation costs, the cost of additional coal purchased to fill excess orders, and incidental expenses.

The taxpayer had no employees engaged in the operation of the business, other than an employee of Peale, Peacock & Kerr, Inc., to whom he paid some additional compensation for keeping his books and records. The taxpayer did not maintain any storage facilities, and did not store any coal. He did not have any capital account on his books, and did not use any capital in said business, either invested or borrowed, other than receipts from the sale of coal.

In the case of *Henry Monk*, 9 B. T. A. 16, we had before us the same issue as that under consideration here, and in many respects, the material facts there are comparable to the facts in this proceeding.

We held that the petitioner was entitled to have his profits tax computed under section 209, *supra*, and in arriving at that conclusion, said:

On beginning the business in 1917 the petitioner had no money except borrowed money and no capital or materials except a few small tools of negligible value. The contracts with the Government had been obtained upon open bids without cost. It is clear that there was no invested capital employed in the business as the term is defined in section 207 of the 1917 Act. See *Cartier* v. *Doyle* (C. C. A.) 277 Fed. 152; *Gus Sun Booking Exchange Co.* v. *Deane*, 10 Fed. (2d) 378; *Empire Fuel Co.* v. *Hayes*, 295 Fed. 704. It is admitted that the $25,000 of borrowed money was used in the business and was perhaps necessary to its existence in the beginning. In *Empire Fuel Co.* v. *Hayes*, *supra*, the court found that a corporation which had borrowed all of the money used to purchase and operate a mine had no invested capital and was, therefore, subject to be taxed under section 209. In *Cartier* v. *Doyle*, *supra*, it was held that a partnership engaged in buying and selling timber and lumber products which conducted its business entirely on borrowed money in considerable amount had "nominal capital" but not "invested capital" and was entitled to have its excess-profits tax computed under section 209. The facts in these cases are not distinguishable in any material respect from those in the case at bar. Those businesses can not be said to require any less use of capital than the one in which the petitioner was engaged.

The petitioner's total expenditures for the year were $607,404.78. He was not required to complete his contracts before receiving any remuneration from the Government. A part of the contract price was paid as soon as the material was delivered upon the job and another part paid when the work was completed. These funds, together with the $25,000 borrowed money, the petitioner kept in a general account out of which all the expenses of operation were paid. In *Park Amusement Co.* v. *McCaughn*, 14 Fed. (2d) 553, a corporation conducting an amusement park had a capital stock of $2,000. Gross expenditures of approximately $150,000 for the year were made out of current receipts. It had a net income for the taxable year of $30,000. The court held that the corporation had not more than a nominal capital of any kind and was subject to excess-profits tax at the flat rate of 8 per cent under section 209.

See also *Railroad Stevedoring Corporation* v. *Bowers*, 7 Fed. (2d) 981.

The facts in the instant case tend perhaps more strongly to bring it within the purview of section 209 than do the facts in any of the cases above cited. Here the taxpayer had no invested capital, within the statutory definition of that term, and used no borrowed capital whatever in the operation of the business. The lease contract cost him nothing other than the royalty paid upon his share of the coal recovered; and all expenses, as well as the purchase price of additional coal, were paid out of current receipts. It is true that during the year 1917, the taxpayer conducted other businesses which required the use of capital, and that all of his funds were kept in the same bank account or accounts, but it is also clearly established that no part of such funds was used in the operation of the business which produced the taxable income involved in this controversy. It further appears that the respondent computed the tax on $25,000 of said income under section 209 and on the balance under section 210. We are not advised why a portion of the net income should be taxed under the one section and another portion of the net income derived from the same business should be taxed under the other section.

It is our opinion that the tax should be computed at the 8 per cent rate as provided in section 209 of the Revenue Act of 1917, *supra*. The deficiency should be redetermined accordingly.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

GREEN dissents.